1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BANK OF AMERICA, N.A.,

Plaintiff(s),

v.

THE VILLAS AT SKY VISTA
HOMEOWNERS ASSOCIATION, et al.,

Defendant(s).

Case No. 2:16-CV-422 JCM (PAL)

ORDER

Presently before the court is plaintiff Bank of America, N.A.'s ("BANA") motion for summary judgment.  (ECF No. 43).  Both defendant The Villas at Sky Vista Homeowners Association (the "HOA") and defendant Thunder Properties, Inc. filed responses.  (ECF Nos. 45, 46).  BANA replied to both responses.  (ECF Nos. 53, 54).

**I.      Introduction**

This litigation involves the nonjudicial HOA foreclosure sale of the real property at 9298 Lone Wolf Circle, Reno, Nevada (the "property").  (ECF No. 43).

In 2005, BANA provided a loan secured by a senior deed of trust on the property.  (*Id.*).  On December 8, 2010, Hampton & Hampton ("H&H") recorded a notice of delinquent assessment lien on behalf of the HOA, listing a sum due of $893.00.  (ECF No. 43-2).

On January 19, 2011, H&H recorded a notice of default and election to sell on the property, which indicated an amount due of $1,788.00.  (ECF No. 43-3).

James C. Mahan
U.S. District Judge

1    On March 22, 2011, and March 25, 2011, Miles, Bauer, Bergstrom & Winters, LLP sent

2    letters to H&H that culminated in an $720.00 tender offer.[1]  (ECF No. 43-6).  That payment was

3    accepted by H&H.  (*Id.*).

4    On September 19, 2013, H&H recorded a second notice of default and election to sell,

5    which identified an amount due of $4,426.00.  (ECF No. 43-4).

6    On May 2, 2014, H&H recorded a notice of trustee's sale, which identified an amount due

7    of $6,464.00.  (ECF No. 43-5).  Finally, on July 30, 2014, H&H recorded a trustee's deed upon

8    sale recognizing Thunder Properties, Inc.'s interest in the real estate.  (ECF No. 43-7).

9    This court's March 9, 2017, order dismissed BANA's Nevada Revised Statute ("NRS") §

10   116.1113 and wrongful foreclosure claims as unexhausted.  (ECF No. 57).  Thus, plaintiff's claims

11   as to injunctive relief and quiet title remain unadjudicated.  *See* (ECF No. 1).

12   **II.    Legal Standard**

13   The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

14   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

15   show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

16   as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate

17   and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–

18   24 (1986).

19   For purposes of summary judgment, disputed factual issues should be construed in favor

20   of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be

21   entitled to a denial of summary judgment, the non-moving party must "set forth specific facts

22   showing that there is a genuine issue for trial."  *Id.*

23   In determining summary judgment, the court applies a burden-shifting analysis.  "When

24   the party moving for summary judgment would bear the burden of proof at trial, it must come

25   forward with evidence which would entitle it to a directed verdict if the evidence went

26   uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480

27

28

---

[1]  The court notes the clarification recording the first letter's listed date.  (ECF No. 43-6).

**James C. Mahan**
**U.S. District Judge**

- 2 -

1   (9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of establishing

2   the absence of a genuine issue of fact on each issue material to its case."  *Id.*

3           By contrast, when the non-moving party bears the burden of proving the claim or defense,

4   the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

5   element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed

6   to make a showing sufficient to establish an element essential to that party's case on which that

7   party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving

8   party fails to meet its initial burden, summary judgment must be denied and the court need not

9   consider the non-moving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–

10  60 (1970).

11          If the moving party satisfies its initial burden, the burden then shifts to the opposing party

12  to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

13  *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

14  opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

15  that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

16  versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

17  630 (9th Cir. 1987).

18          The Ninth Circuit has held that information contained in an inadmissible form may still be

19  considered for summary judgment if the information itself would be admissible at trial.  *Fraser v.*

20  *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410,

21  418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to

22  produce evidence in a form that would be admissible at trial, as long as the party satisfies the

23  requirements of Federal Rules of Civil Procedure 56.")).

24  **III.    Discussion**

25          *a.  Injunctive relief as a claim*

26          Despite plaintiff's formulation of this request as a claim, injunctive relief is a remedy, not

27  a cause of action.  *See, e.g.*, *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed. Appx. 680, 684

28  (9th Cir. 2014) (citation omitted).  Therefore, this claim will be dismissed.

**James C. Mahan**
**U.S. District Judge**

1

    b.  *Quiet title*

2

    Under Nevada law, "[a]n action may be brought by any person against another who claims

3

an estate or interest in real property, adverse to the person bringing the action for the purpose of

4

determining such adverse claim." Nev. Rev. Stat. § 40.010.  "A plea to quiet title does not require

5

any particular elements, but each party must plead and prove his or her own claim to the property

6

in question and a plaintiff's right to relief therefore depends on superiority of title."  *Chapman v.*

7

*Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation

8

marks omitted).  Therefore, for plaintiff to succeed on its quiet title action, it needs to show that

9

its claim to the property is superior to all others.  *See also Breliant v. Preferred Equities Corp.*,

10

918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff

11

to prove good title in himself.").

12

    i.  *Tender*

13

    The HOA superpriority lien portion consists of "the last nine months of unpaid HOA dues

14

***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all

15

other HOA fees or assessments."  *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 411 (9th

16

Cir. 2014) (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d 1142, 1150 (D.

17

Nev. 2013) ("The superpriority lien consists only of unpaid assessments and certain charges

18

specifically identified in § 116.31162.").

19

    BANA asserts that *Horizons at Seven Hills v. Ikon Holdings*, 373 P.3d 66, 69 (Nev. 2016),

20

indicates the super-priority lien value to be "nine months of common assessments and not a penny

21

more."  (ECF No. 43 at 8).  BANA misreads *Ikon Holdings*; indeed, the Nevada Supreme Court

22

has maintained a broader definition of the super-priority lien than that articulated by BANA.  *See*

23

*Ikon Holdings*, 373 P.3d at 69 n.5 ("Pursuant to NRS 116.310312(4), 'maintenance or abatement'

24

costs include 'reasonable inspection fees, notification and collection costs and interest.'"); *see also*

25

*Deutsche Bank Nat'l Trust Co. v. Talasera & Vicanto Homeowners' Ass'n*, No. 2:15-cv-01139-

26

JCM-PAL, 2017 WL 736879, at *9 (D. Nev. Feb. 24, 2017) (distinguishing between the present

27

argument and *Ikon Holdings*).

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

Next, BANA's offered letter did not request a calculation of the amount to pay off the lien; the letter instead indicates an inquiry as to the amount of the "assessments for common expenses." (ECF No. 43-6 at 7).  Hampton & Hampton replied, explicitly qualifying its answer of $720.00 as "the amount due for 9 months of assessments."  (*Id.* at 11).  As discussed above, monthly assessments due are not the only variable considered by a party calculating the super-priority lien.

Moreover, that letter attempted to apply restrictive terms and conditions with its tender that limited the legal rights of the HOA if payment was accepted, stated as follows:

> [A]ny endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and an express agreement that BAC's financial obligation towards the HOA in regards to real property located at 9298 Lone Wolf Circle have now been "paid in full."

(*Id.* at 15).

The attempted tender did not include nuisance and abatement charges, was purportedly subject to terms that would force the HOA to admit that this was the proper amount, and BANA now incorrectly claims that acceptance of tender satisfied the full amount of the HOA lien.  (ECF No. 34).

Here, there is no clear indication that there was an accord and satisfaction whereby the superpriority HOA lien would be fully satisfied by a lesser amount than that owed.  *See Pierce Lathing Co. v. ISEC, Inc.*, 956 P.2d 93, 97 (Nev. 1998).  Indeed, BANA does not argue that accord and satisfaction apply here.  *See* (ECF No. 43).

Moreover, BANA neglects to indicate whether it kept current on the amount due after that date, as it posits that it made satisfactory tender in March 2011, but the foreclosure sale occurred on June 11, 2014.  (*Id.*).  Even if this court agreed with BANA's flawed understanding of what comprises the super-priority lien, that definition highlights liabilities accruing monthly.  *See* (*id.*).  Thus, BANA knew that it might have to make payments to protect its lien, but it provides no evidence that it did so for the more than three years that followed the 2011 tender offer.  *See* (*id.*); *see also* (ECF No. 43-6).  Considering the equities here, BANA cannot claim an equitable remedy (quiet title) as a result of its lack of diligence.  *See Shadow Wood Homeowners Assoc., Inc. v. N.Y.*

1    *Cmty. Bancorp, Inc.*, 366 P.3d 1105, 1112 (Nev. 2016) (discussing quiet title as an equitable

2    remedy).

3                    *ii.*  Bourne Valley *and NRS chapter 116*

4            BANA argues that NRS Chapter 116 violates due process and that actual notice of an

5    impending foreclosure sale is irrelevant because the Ninth Circuit, in *Bourne Valley Court Trust*

6    *v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL

7    1300223 (U.S. June 26, 2017) ("*Bourne Valley*"), invalidated NRS chapter 116.  (ECF No. 50).

8            However, the Ninth Circuit actually held that NRS 116.3116's "opt-in" notice scheme,

9    which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender

10   had affirmatively requested notice, facially violated mortgage lenders' constitutional due process

11   rights.  *Bourne Valley*, 832 F.3d at 1157–58.  The facially unconstitutional provision, as identified

12   in *Bourne Valley*, exists in NRS 116.31163(2).  *See id.* at 1158.  At issue in that case was the "opt-

13   in" provision that unconstitutionally shifts the notice burden to holders of the property interest at

14   risk.  *See id.*

15          To state a procedural due process claim, a claimant must allege "(1) a deprivation of a

16   constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

17   protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir.

18   1998).  BANA has satisfied the first element as a deed of trust is a property interest under Nevada

19   law.  *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S.

20   791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is

21   significantly affected by a tax sale").  However, BANA fails on the second prong.

22          Due process does not require actual notice.  *Jones v. Flowers*, 547 U.S. 220, 226 (2006).

23   Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested

24   parties of the pendency of the action and afford them an opportunity to present their objections."

25   *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*,

26   832 F.3d at 1158.

27          Here, adequate notice was given to the interested parties prior to extinguishing a property

28   right.  In fact, BANA acknowledges having received the notice of default.  (ECF No. 43-6 at 6)

**James C. Mahan**
**U.S. District Judge**

- 6 -

1    ("This letter is written in response to your Notice of Default with regard to the HOA assessments

2    purportedly owed on the above described real property . . . ."). As a result, the notice of trustee's

3    sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put

4    BANA on notice that its interest was subject to pendency of action and offered all of the required

5    information. *See also Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well

6    established that one who is not prejudiced by the operation of a statute cannot question its

7    validity."). Further, BANA does not dispute receiving actual notice of the foreclosure sale, but

8    merely that "actual notice does not change the analysis." (ECF No. 43 at 7).

9                               *iii.  Commercial unreasonability*

10         In *Shadow Wood Homeowners Assoc., Inc.*, the Nevada Supreme Court held that an HOA's

11   foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on

12   the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or

13   oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F.

14   Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a

15   property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there

16   must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*,

17   639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside

18   a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v.

19   Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not

20   be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is

21   "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings

22   about the inadequacy of price" (internal quotation omitted)))).

23         Here, BANA argues that, according to *Shadow Wood*'s adoption of the Restatement

24   approach, "a grossly inadequate price itself is the proof of unfairness required to set aside a

25   foreclosure sale." (ECF No. 43 at 11).

26         The *Shadow Wood* court makes no such holding. Furthermore, no language exists in

27   *Shadow Wood* that exhibits the Nevada Supreme Court's intention to adopt the Restatement.

28   *Compare Shadow Wood*, 366 P.3d at 1112 (citing the Restatement as secondary authority to

James C. Mahan
U.S. District Judge

- 7 -

warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 191 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); and *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A).

Because Nevada courts have not adopted the relevant section(s) of the Restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530. In light of the above discussion of improper tender, BANA cannot show that it suffered from defendants' inequitable actions.

Next, BANA claims that the CC&Rs represented to the public that BANA's lien would not be extinguished by an HOA foreclosure sale. (ECF No. 43 at 12). BANA cites to this court's decision in *ZYZZX2 v. Dizon*, No. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016), to support its argument.[2]

This court's decision in *ZYZZX2* was rendered in light of the combination of a mortgage protection clause and an HOA's misleading mailings. *See ZYZZX2*, 2016 WL 1181666 at *4–5 ("The association sent a letter to Wells Fargo and other interested parties stating that its foreclosure would not affect the senior lender/mortgage holder's lien."). Unlike in *ZYZZX2*, the events surrounding the alleged tender offer here make it clear that BANA was aware that its interest in the property was at risk. *See id.*; *see also* (ECF No. 43-6).

Moreover, NRS 116.1104 provides that "[e]xcept as expressly provided in this chapter, its provisions may not be varied by agreement, and rights conferred by it may not be waived." Nev. Rev. Stat. § 116.1104; *see also Bayview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the reasoning in *ZYZZX2*); *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp.

---

[2] BANA makes no argument regarding fraud. *See* (ECF No. 43).

3d 1141, 1168 (D. Nev. 2016) (holding that an HOA's failure to comply with its CC&Rs does not set aside a foreclosure sale, due to NRS 116.1104).

It has generally been accepted in the United States' jurisprudence that individuals know the law.  *See, e.g.*, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 625 (2010).  Accordingly, this court will presume here that those examining CC&Rs in preparation to bid on a property are aware of NRS 116.1104.  Thus, BANA's present lack of evidence showing that bidders were dissuaded from attempting to purchase the property—as well as its actual knowledge that its interest was threatened—forecloses this argument.

### iv.  *Retroactivity of* SFR Investments

Finally, BANA argues that *SFR Investments* should not be applied retroactively.  (ECF No. 43).  The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales.  *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*").  Thus, *SFR Investments* applies to this case.

## IV.    Conclusion

In sum, BANA has not shown that it is entitled to summary judgment as to its claim for quiet title because it has not proven a superior interest in the underlying property.  Additionally, BANA's claim for injunctive relief will be denied.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for summary judgment (ECF No. 43) be, and the same hereby is, DENIED.

James C. Mahan
U.S. District Judge

1    IT IS FURTHER ORDERED that BANA's claim for injunctive relief (ECF No. 1) be, and

2    the same hereby is, DENIED.

3    DATED July 20, 2017.

4    _____
     UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**